IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

STEPHANIE LESTER                 PLAINTIFF

V.            NO. 12-5274

CAROLYN W. COLVIN,[1]
Acting Commissioner of the Social Security Administration     DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Stephanie Lester, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.  Procedural Background:**

Plaintiff protectively filed her application for DIB on August 6, 2009, alleging disability since May 15, 2006, due to "Diabetes, scoliosis, severe anxiety." (Tr. 110-111, 134, 138). An administrative hearing was held on June 14, 2011, at which Plaintiff appeared with counsel and testified. (Tr. 27-54).

By written decision dated August 9, 2011, the ALJ found that Plaintiff had an impairment or combination of impairments that were severe - noninsulin dependent diabetes mellitus,

---

[1]Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

peripheral vestibulopathy,[2] and anxiety disorder. (Tr. 12). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 12). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform work at all exertional levels and is able to understand, remember and carryout only simple and some complex tasks, with no significant interaction with the general public or coworkers and no exposure to hazards such as unprotected heights, being around dangerous moving machinery, or operation of motorized vehicles or temperature or humidity extremes.

(Tr. 13). With the help of a vocational expert (VE), the ALJ determined Plaintiff was not capable of performing her past relevant work, but that there were other jobs Plaintiff would be able to perform, such as auto detailer, hotel housekeeping, and small products assembler. (Tr. 20-21).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied the request on October 22, 2012. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 9, 11).

**II.     Evidence Presented:**

The first medical record in the transcript is dated April 7, 2006, when Plaintiff first saw Dr. Ronny G. Phipps, and reported that she was a diabetic and was taking Glipizide, but had to stop it because it was making her sugars "bottom out." She was also having nausea and dizzy spells. (Tr. 329). Dr. Phipps reported that Plaintiff had never taken Metformin or Actos by itself,

---

[2]Vestibulopathy - Any abnormality of the vestibular apparatus, e.g., Meniere disease. Stedman's Medical Dictionary 2122 (28th ed. 2006).

and she indicated she felt comfortable controlling her diabetes with her diet, although she admitted she was not following it as closely as she should. (Tr. 329). She also admitted she was not using her monitor and checking sugars very frequently - maybe once or so a week. (Tr. 329). Dr. Phipps started Plaintiff on Metformin, 500 mg., twice a day. (Tr. 329).

The next record is dated April 12, 2006, when Plaintiff saw Dr. W.H. Howard, Jr., telling him that she had been hospitalized for three days for arm pain, and all tests were okay. (Tr. 226). Plaintiff also advised that she had anxiety and did not like Paxil anymore. (Tr. 226). She also did not like taking Metformin, stating it gave her diarrhea. (Tr. 226). On May 1, 2006, when Plaintiff again saw Dr. Howard, she reported having anxiety and panic attacks and he took her off of Xanax and started her again on Paxil. (Tr. 226). On or around May 13, 2006, Plaintiff reported the medications were not helping and she was having dizzy spells. (Tr. 226).

On September 17, 2006, Plaintiff presented herself to Northwest Medical Center of Benton County, complaining of dizziness. (Tr. 204). The clinical impression was acute peripheral vestibulopathy. (Tr. 207). Plaintiff again complained of anxiety and dizziness to Dr. Howard on October 2, 2006, and he recommended an MRI of Plaintiff's head be performed. (Tr. 225). The MRI was reported as within normal limits on November 13, 2006. (Tr. 224). Plaintiff again stopped taking Metformin on December 21, 2006, as it was making her sick. (Tr. 224). Plaintiff again complained of anxiety and dizziness to Dr. Howard on January 21, 2008. (Tr. 223).

On May 19, 2008, Plaintiff saw Dr. Kevin Earl. (Tr. 216-219). Plaintiff advised Dr. Earl that the Paxil was working "ok." (Tr. 219). Dr. Earl assessed Plaintiff with allergic conjunctivitis, allergic rhinitis, depression, and benign positional vertigo (dizziness). (Tr. 219).

One year later, on May 1, 2009, Plaintiff complained to Dr. Howard of weak legs, sinus congestion and drainage, and anxiety. (Tr. 222). In addition, her blood sugar was high. (Tr. 222). On October 21, 2009, Plaintiff complained to Dr. Phipps of a sore throat, and was diagnosed with sinusitis acute maxillary. (Tr. 332).

On December 31, 2009, Plaintiff underwent a General Physical Examination by Dr. Neil Mullins. (Tr. 233-238). Dr. Mullins reported that all ranges of motion were normal, Plaintiff could perform all limb functions, and she had 100% grip in both hands. (Tr. 235-236). Dr. Mullins diagnosed Plaintiff with chronic anxiety by history only and mild diabetes mellitus, type II, on diet only. (Tr. 237). He noted no limitations. (Tr. 237). Dr. Mullins also indicated that he could not find any evidence of scoliosis. (Tr. 238). He noted that her diabetes was mild by history and that she took no medication for it, and that Plaintiff reported that her largest complaint was "anxiety," but was not on specific medicine for it - she only took Paxil. (Tr. 238).

On January 6, 2010, Terry L. Efird, Ph.D., conducted a Mental Diagnostic Evaluation of Plaintiff. (Tr. 239-242). Plaintiff reported taking Paxil and denied any side effects. (Tr. 239). She also reported that the medication had been beneficial. (Tr. 239). Dr. Efird diagnosed Plaintiff as follows:

> Axis I:     Panic disorder, with agoraphobia
> Axis II:    deferred
> Axis V:     50-60

(Tr. 241). Dr. Efird found that the ability to perform most activities of daily living satisfactorily was endorsed; that Plaintiff communicated and interacted in a reasonably socially adequate manner; that she communicated in a reasonably intelligible and effective manner; that she had the capacity to perform basic cognitive tasks required for basic work like activities, and that no

-4-

remarkable indications of cognitive inefficiency were noted. (Tr. 242). Dr. Efird also noted no remarkable problems with attention/concentration; persistence under the structured and supportive conditions of the evaluation, or with mental pace or performance. (Tr. 242).

On January 8, 2010, non-examining consultant Dan Donahue, Ph.D., completed a Psychiatric Review Technique form and Mental RFC Assessment form. (Tr. 228-231, 244-256). Dr. Donahue found that Plaintiff had a mild degree of limitation in restriction of activities of daily living; a moderate degree of limitation in difficulties in maintaining social functioning and in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration. (Tr. 254). He also found that Plaintiff was moderately limited in seven categories and not significantly limited in twelve categories. (Tr. 230). Dr. Donahue concluded that Plaintiff was able to perform work where interpersonal contact was incidental to work performed, e.g. assembly work; complexity of tasks was learned and performed by rote, few variables, little judgment, and where supervision required was simple, direct and concrete (unskilled). (Tr. 230). Dr. Donahue reported that he noted no problems with "CPP" or communication, and that Plaintiff was volunteering her time at a thrift store twice weekly and enjoyed going to concerts. (Tr. 231). He found her activities of daily living were moderately limited socially, and that she should be capable of unskilled types of work in less interpersonal environments. (Tr. 231).

On April 5, 2010, Plaintiff presented to Mercy Emergency Department, complaining of low blood sugar and a fall. (Tr. 273). She was diagnosed with anxiety and diabetes. (Tr. 274).

On May 11, 2010, Plaintiff again presented herself to Mercy Emergency Department, reporting that she had gone to her primary care physician and he recommended she go to the

emergency department. (Tr. 300). She was reported as having high blood sugar, which was a chronic problem. (Tr. 300). Plaintiff had normal mood and affect, and the clinical impression was:

> NIDDM (Non-Insulin Dependent Diabetes Mellitus)
> Comment: "Acidosis" designated on PCP records
> Alkalosis
> Comment: Probably acute respiratory alkalosis; pt was hyperventilating during blood draw
> Hypokalemia

(Tr. 304).

On May 14, 2010, Plaintiff presented herself to Mercy Health System of Northwest Arkansas for evaluation of an abnormal EKG, which demonstrated a right bundle branch block morphology with normal sinus rhythm. (Tr. 322). She was reported as asymptomatic with the exception of mild shortness of breath. (Tr. 322). The plan was to follow-up with Plaintiff in one month with an echocardiogram, to exclude structural heart disease. (Tr. 322). An echocardiogram was performed on May 21, 2010, which revealed right bundle branch block; nonspecific abnormal electrocardiogram (ECG)(EKG), and shortness of breath. (Tr. 325).

On June 17, 2010, Plaintiff was seen at Mercy Physicians Plaza by Heather E. Rothrock, APN, for follow-up and review of the echocardiogram. (Tr. 320). Plaintiff was reported as overall doing well. (Tr. 320). She denied chest discomfort, shortness of breath, dyspnea on exertion, palpitations, dizziness, syncope, LE edema, "PND," orthopnea, or claudication. (Tr. 320). Plaintiff had normal range of motion and exhibited no edema and no tenderness muscoloskeletally, had normal reflexes, had a normal mood and affect, and was reported as "overall doing well.' (Tr. 321). She was not having symptoms of angina or congestive heart

failure. Her blood pressure was reported as well controlled. (Tr. 321). It was noted that Plaintiff had right bundle branch block for years and had a stress test three years prior at NWMC that Plaintiff reported was normal. Ms. Rothrock indicated that they opted not to pursue further stress testing at that time, as Plaintiff was not having symptoms, and noted that they would see Plaintiff back in one year. (Tr. 321).

**III.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A),

1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC). See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**IV.     Discussion:**

Plaintiff raises the following arguments on appeal: 1) The ALJ erred in finding Plaintiff does not have the severe impairment of panic disorder with agoraphobia; 2) The ALJ erred in rejecting Plaintiff's subjective complaints of disabling pain and failing to adequately consider the side effects of Plaintiff's medication; 3) The ALJ's decision is not supported by substantial evidence; and 4) The ALJ failed to fulfill his duty to develop the record. (Doc. 9).

### A. Severe Impairment:

An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § § 1520(a)(4)ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § § 404.1521, 416.921. The Supreme Court has adopted a "de minimis standard" with regard to the severity standard. Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cri. 1989).

Plaintiff contends the ALJ erred by not considering her panic disorder with agoraphobia a severe impairment. The ALJ did find that Plaintiff suffered from the severe impairment of anxiety disorder, and included in his RFC assessment mental limitations, such as the fact that Plaintiff was able to understand, remember and carryout only simple and some complex tasks, with no significant interaction with the general public or coworkers.

Between 2006 and 2010, Plaintiff complained of "anxiety" to the physicians, and it was not until Plaintiff saw Dr. Efird on January 6, 2010, that Plaintiff was diagnosed with panic disorder, with agoraphobia. (Tr. 241). Dr. Efird also reported that Plaintiff was only taking Paxil. Dr. Donahue also found Plaintiff suffered from anxiety-related disorders, with anxiety as the predominant disturbance or anxiety experienced in the attempt to master symptoms, as evidenced by "recurrent severe panic attacks...." (Tr. 249). Dr. Donahue also noted that Plaintiff had been dealing with alleged anxiety for 6-7 years and did not identify a clear trigger, and noted that her current prescription was beneficial. (Tr. 231). At the hearing, Plaintiff testified that even though she had medical insurance, she had not been for counseling because "I just don't believe it would

help me in my situation." (Tr. 42). Accordingly, the record shows Plaintiff sought only minimal and conservative treatment and never required more aggressive forms of mental health treatment. Vanlue v. Astrue, No. 4:11CV595TIA, 2012 WL 4464797 at *12 (E.D. Mo. Sept. 26, 2012); see Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000).

Based upon the foregoing, there is sufficient evidence to support the ALJ's determination of severe impairments.

### B. Credibility Findings:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

Plaintiff argues that the ALJ erred in rejecting Plaintiff's subjective complaints of disabling pain and failing to adequately consider the side effects of Plaintiff's medication. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Tr. 15). However, he also found that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to

the extent they were inconsistent with his RFC assessment. (Tr. 15). The ALJ evaluated Plaintiff's testimony regarding her pain, and concluded that her pain may be limiting, but when compared with the total evidence, it was not severe enough to preclude all types of work. (Tr. 19). He noted that Dr. Mullins reported he could not find any serious scoliosis, but that an X-ray would tell more but it was grossly hard to see. The ALJ also reported that Plaintiff's diabetes was mild by history and she took no medication for it. (Tr. 19). He finally noted that Plaintiff's only medication was Paxil. (Tr. 19). The ALJ discussed all of Plaintiff's daily activities, including the fact that she was able to shop independently but preferred someone be with her, could satisfactorily handle personal finances, had no problem with personal care, went to the movies on occasion and concerts twice yearly, and volunteered at a friend's thrift store twice a week. (Tr. 19). The ALJ also discussed all of the medical records, noting that the record did not contain any opinions from treating or non-treating physicians indicating that Plaintiff was disabled or had limitations greater than those determined in his decision. (Tr. 20).

It is also noteworthy that upon general physical examination, Dr. Mullins found all of Plaintiff's ranges of motion to be normal, she could perform all limb functions, and she had 100% grip in both hands. (Tr. 235-236). The mental examinations also support the fact that Plaintiff would be capable of performing some time of unskilled work.

Regarding side effects of medication, the ALJ specifically addressed this as follows:

> With regard to medication side effects, although the claimant has alleged various side effects from the use of the medications, the medical records, such as office treatment notes, do not corroborate those allegations, as the medications were either discontinued or adjusted accordingly. (Exhibits 3F-5F, 18F-20F).

(Tr. 19).

AO72A
(Rev. 8/82)

In addition, by the time Plaintiff was seen by Heather E. Rothrock, APN, on June 17, 2010, Plaintiff was not having symptoms of angina or CHF (congestive heart failure), her blood pressure was well controlled, her DOE (dyspnea on exertion) had improved, she was nervous and anxious, but had normal mood and affect, and the echocardiogram was normal. (Tr. 321). She also had normal range of motion and exhibited no edema and no tenderness. (Tr. 321). Although it was noted that Plaintiff had right bundle branch block, it was decided she did not need to pursue further stress testing at that time , as she was not having symptoms. (Tr. 321). Plaintiff also denied chest discomfort, shortness of breath, dyspnea on exertion, palpitations, dizziness, or syncope. (Tr. 320).

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's credibility findings.

### C.    Failure to Develop Record:

Plaintiff argues that the ALJ should have ordered an X-ray of Plaintiff's back because Dr. Mullins noted that he could find no evidence of scoliosis.

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This is particularly true when Plaintiff is not represented by counsel. Payton v. Shalala, 25 FG.3d 684, 686 (8th Cir. 1994). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press her case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See

Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 1989).

The ALJ had before him medical records dating from 2006 to 2010, with examinations revealing normal ranges of motion, no edema and no tenderness and no real treatment for scoliosis during the relevant period of review. In addition, even though Dr. Mullins noted some thoracic pain, he found no limitations. (Tr. 233-237).

A review of the record indicates that there was sufficient evidence to allow the ALJ to make a determination, and Plaintiff has failed to demonstrate that the record was not fully developed, or that she was prejudiced by any perceived failure to develop the record.

Based upon the foregoing, as well as those reasons given in Defendant's well-stated brief, the Court finds Plaintiff's argument to be without merit.

### D. Substantial Evidence:

Plaintiff generally argues that there is not substantial evidence to support the ALJ's decision. The Court believes that for the reasons set forth above, this argument is without merit.

### V. Conclusion:

Accordingly, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).**

**The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this_____ day of April, 2014.

*/s/ Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)